# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 21-1486V
Filed: June 7, 2024

| | |
|---|---|
| TERRA RAMSEY, as mother and natural guardian of C.R. as a minor,<br><br>      Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>      Respondent. | Special Master Horner |

*Braden Andrew Blumenstiel*, The Law Office of DuPont & Blumenstiel, Dublin, OH, for petitioner.
*Voris Edward Johnson*, U.S. Department of Justice, Washington, DC, for respondent.

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

  On June 17, 2021, petitioner, Terra Ramsey, filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-10-34 (2012),[2] alleging that C.R. suffered dizziness, loss of equilibrium, hindered motor skills, uncontrollable crying, decreased consciousness, and other neurological issues within 24 hours of his June 18, 2018 DTaP, Hib, and pneumococcal vaccinations.  (ECF No. 1, pp. 1-2.)  Petitioner alleged C.R. eventually received diagnoses of encephalopathy and autism (also referred to in this decision as "autism spectrum disorder" or "ASD").  (*Id*. at 3.)  The case was dismissed on March 13, 2023.  (ECF No. 29.)  Subsequently, petitioner moved for an award of attorneys' fees and costs totaling $32,028.11.  (ECF No. 34.)  However, respondent opposes the motion, contending there was not a reasonable basis for the

---

[1] Because this document contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services).  **This means the document will be available to anyone with access to the internet.**  In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy.  If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] Within this decision, all citations to § 300aa will be the relevant sections of the Vaccine Act at 42 U.S.C. § 300aa-10-34.

1

filing of the petition.  (ECF No. 35.)  For the reasons discussed below, petitioner's motion is **DENIED** and there will be no award for attorneys' fees and costs in this case.

## I.      Procedural History

After petitioner filed C.R.'s medical records, this case was reassigned to me on June 3, 2022.  (ECF No. 19.)  I promptly scheduled a status conference which was held on June 23, 2022.  (ECF No. 21.)  I explained that "I held this status conference in lieu of issuing an Initial Order to underscore to petitioner's counsel that I have serious concerns regarding the viability of this case."  (*Id*. at 2-5.)

During the status conference, I explained that numerous prior cases alleging vaccine-caused autism,

> have invariably been dismissed for failing to preponderantly establish a prima facie showing of causation.[3]  Therefore, it is highly unlikely that I

---

[3] In the late '90s and 2000's, thousands of cases were filed alleging vaccine-caused autism.  In response, an "Omnibus Autism Proceeding" was conducted in which three special masters resolved six text cases involving two different theories of causation.  All six cases resulted in dismissal.  *See Cedillo v. Sec'y of Health & Human Servs*., No. 98-916V, 2009 WL 331968 (Fed. Cl. Spec. Mstr. Feb. 12, 2009) *aff'd*, 89 Fed. Cl. 158 (2009), *aff'd*, 617 F.3d 1328 (Fed. Cir. 2010); *Hazlehurst v. Sec'y of Health & Human Servs*., No. 03-654V, 2009 WL 332306 (Fed. Cl. Spec. Mstr. Feb. 12, 2009), *aff'd* 88 Fed. Cl. 473 (2009), *aff'd*, 604 F.3d 1343 (Fed. Cir. 2010); *Snyder v. Sec'y of Health & Human Servs*., No. 01-162V, 2009 WL 332044 (Fed. Cl. Spec. Mstr. Feb. 12, 2009), *aff'd*, 88 Fed. Cl. 706 (2009); *Dwyer v. Sec'y of Health & Human Servs*., No. 03-1202V, 2010 WL 892250 (Fed. Cl. Spec. Mstr. Mar. 12, 2010); *King v. Sec'y of Health & Human Servs*., No. 03-584V, 2010 WL 892296 (Fed. Cl. Spec. Mstr. Mar. 12, 2010); *Mead v. Sec'y of Health & Human Servs*., No. 03-215V, 2010 WL 892248 (Fed. Cl. Spec. Mstr. Mar. 12, 2010).  Following resolution of the OAP test cases, most other autism cases falling within the OAP were voluntarily dismissed.  However, many cases went on to be litigated based on additional theories of causation.  No petitioner succeeded via any theory in asserting that any vaccine had caused autism. *See*, *e.g.*, *Henderson v. Sec'y of Health & Human Servs*., No. 09-616V, 2012 WL 5194060 (Fed. Cl. Spec. Mstr. Sept. 28, 2012) (autism not caused by pneumococcal vaccination); *Franklin v. Sec'y of Health & Human Servs*., No. 99-855V, 2013 WL 3755954 (Fed. Cl. Spec. Mstr. Hastings May 16, 2013) (MMR and other vaccines found not to contribute to autism); *Coombs v. Sec'y of Health & Human Servs*., No. 08-818V, 2014 WL 1677584 (Fed. Cl. Spec. Mstr. Hastings Apr. 8, 2014) (autism not caused by MMR or Varivax vaccines); *Blake v. Sec'y of Health & Human Servs*., No. 03-31V, 2014 WL 2769979 (Fed. Cl. Spec. Mstr. Vowell May 21, 2014) (autism not caused by MMR vaccination); *Long v. Sec'y of Health & Human Servs*., No. 08-792V, 2015 WL 1011740 (Fed. Cl. Spec. Mstr. Hastings Feb. 19, 2015) (autism not caused by influenza vaccine); *Brook v. Sec'y of Health & Human Servs.* No. 04-405V, 2015 WL 3799646 (Fed. Cl. Spec. Mstr. Hastings May 14, 2015) (autism not caused by MMR or Varivax vaccines); *Holt v. Sec'y of Health & Human Servs*., No. 05-136V, 2015 WL 4381588 (Fed. Cl. Spec. Mstr. Vowell June 24, 2015) (autism not caused by hepatitis B vaccine); *Lehner v. Sec'y of Health & Human Servs*., No. 08-554V, 2015 WL 5443461 (Fed. Cl. Spec. Mstr. Vowell July 22, 2015) (autism not caused by influenza vaccine); *Miller v. Sec'y of Health & Human Servs*., No. 02-235V, 2015 WL 5456093 (Fed. Cl. Spec. Mstr. Vowell August 18, 2015) (ASD not caused by combination of vaccines); *Allen v Sec'y of Health & Human Servs*., No. 02-1237V, 2015 WL 6160215 (Fed. Cl. Spec. Mstr. Vowell Sept. 26, 2015) (autism not caused by MMR vaccination); *R.K. v. Sec'y of Health & Human Servs*., No. 03-632V, 2015 WL 10936124 (Fed. Cl. Spec. Mstr. Vowell Sept. 28, 2015) (autism not caused by influenza vaccine), *aff'd*, 125 Fed. Cl. 57 (2016); *Hardy v. Sec'y of Health & Human Servs*., No. 08-108V, 2015 WL 7732603 (Fed. Cl. Spec. Mstr. Hastings Nov. 3, 2015) (autism not caused by several vaccines); *Sturdivant v. Sec'y of Health & Human Servs*., No. 07-788V, 2016 WL 552529 (Fed. Cl. Spec. Mstr. Hastings Jan. 21, 2016) (autism not caused by Hib and Prevnar vaccines); *R.V. v. Sec'y of Health & Human Servs.,* No. 08-504V

> would conclude there was a reasonable basis for the filing of this petition unless petitioner presents some credible, objective evidence of the alleged post-vaccination encephalopathy injury separate from C.R.'s ASD.

(*Id*. at 3-4.) I also cautioned that "[p]rior program petitioners have attempted – and failed – to recast their claims that a vaccine caused an autism injury as claims that the vaccine precipitated some other initial form of injury like an encephalopathy, that later indirectly produced developmental problems due to the resulting neurologic injury." (*Id*. at 4 (emphasis omitted).) I also noted that prior program petitioners have also been unsuccessful "in seeking to use hindsight to recast gradual or subtle onset of ASD as an abrupt post-vaccination phenomenon." (*Id*.)

Acknowledging that petitioner had filed a letter from C.R.'s treating pediatrician, Dr. Backes, purporting to diagnosis a post-vaccination encephalopathy, I permitted petitioner an opportunity to determine if an encephalopathy claim would be possible. In particular, I required petitioner to file Dr. Backes's medical records. (ECF No. 21, p. 5.) However, I explained that Dr. Backes's letter strongly suggested that the purported encephalopathy diagnosis was based solely on parental report and that, contrary to that diagnosis, Dr. Backes had encounters with C.R. post-vaccination from which he did not suggest he had recorded any impression of encephalopathy. (*Id*. at 2-3.) Furthermore, medical records that had been filed showed that during the same period petitioner was reporting to other physicians symptoms concerning for emerging autism. (*Id*. at 2.) I expressed to counsel that "I have serious concerns that this case lacks a reasonable basis" and recommended that petitioner give strong consideration to voluntarily dismissing the case. (*Id*. at 5.)

---

(Fed. Cl. Spec. Mstr. Corcoran Feb. 19, 2016) (autism not caused by influenza vaccine) (on Court website), *aff'd*, 2016 WL 3647786 (Fed. Cl. June 2, 2016); *Murphy v. Sec'y of Health & Human Servs.*, No. 05-1063V, 2016 WL 3034047 (Fed. Cl. Spec. Mstr. Corcoran Apr. 25, 2016) (autism not caused by DTaP or MMR vaccines) (on review); *Waddell v. Sec'y of Health & Human Servs.*, No. 10-316V, 2012 WL 4829291 (Fed. Cl. Spec. Mstr. Campbell-Smith Sept. 19, 2012) (autism not caused by MMR vaccination); *Fester v. Sec'y of Health & Human Servs.*, No. 10-243V, 2016 WL 1745436 (Fed. Cl. Spec. Mstr. Dorsey Apr. 7, 2016) (autism not caused by measles, mumps, rubella, and varicella (MMRV) vaccine); *Fresco v. Sec'y of Health & Human Servs.*, No. 06-469V, 2013 WL 364723 (Fed. Cl. Spec. Mstr. Vowell Jan. 7, 2013) (autism not caused by multiple vaccines); *Fesanco v. Sec'y of Health & Human Servs.*, No. 02-1770, 2010 WL 4955721 (Fed. Cl. Spec. Mstr. Hastings Nov. 9, 2010) (autism not caused by multiple vaccines); *Miller v. Sec'y of Health & Human Servs.*, No. 06-753V, 2012 WL 12507077 (Fed. Cl. Spec. Mstr. Hastings Sept. 25, 2012) (autism not caused by DTaP or MMR vaccines); *Pietrucha v. Sec'y of Health & Human Servs.*, No. 00-269V, 2014 WL 4538058 (Fed. Cl. Spec. Mstr. Hastings Aug. 22, 2014) (autism not caused by multiple vaccines); *Bushnell v. Sec'y of Health & Human Servs.*, No. 02-1648, 2015 WL 4099824 (Fed. Cl. Spec. Mstr. Hastings June 12, 2015) (autism not caused by multiple vaccines); *Bokmuller v. Sec'y of Health & Human Servs.*, No. 08-573, 2015 WL 4467162 (Fed. Cl. Spec. Mstr. Hastings June 26, 2015) (autism not caused by multiple vaccines); *Canuto v. Sec'y of Health & Human Servs.*, No. 04-1128, 2015 WL 9854939 (Fed. Cl. Spec. Mstr. Hastings Dec. 18, 2015) (autism not caused by DTP and DTaP vaccines); *Valle v. Sec'y of Health & Human Servs.*, No. 02-220V, 2016 WL 2604782 (Fed. Cl. Spec. Mstr. Hastings Apr. 13, 2016) (autism not caused by DTaP vaccine). Judges of this court have affirmed the practice of dismissal without trial in such cases. *E.g.*, *Fesanco v. Sec'y of Health & Human Servs.*, 99 Fed. Cl. 28 (2011) (Judge Braden affirming); *Canuto v. Sec'y of Health & Human Servs.*, No. 04-1128V, 2016 WL 2586510 (Judge Yock affirming).

Subsequently, petitioner filed Dr. Backes's medical records on August 10, 2022. (ECF No. 22; Exhibit 18.)  I then issued a Scheduling Order requiring Respondent to file his Rule 4 Report, but also explaining that my review of Dr. Backes's medical records confirmed that there were pediatric encounters with C.R. in August and September of 2018 that did not support a diagnosis of encephalopathy.  (ECF No. 23.)

Respondent filed his Rule 4 Report on October 7, 2022.  (ECF No. 24.)  Respondent argued that "at bottom, this is an autism case that is indistinguishable from past autism cases, which the special masters have uniformly dismissed."  (*Id*. at 11.)  Respondent argued that the petition lacked a reasonable basis for filing.  (*Id*. at 12.)

After respondent filed his Rule 4 Report, I issued an Order to Show Cause why the case should not be dismissed.  (ECF No. 25.)  After two motions for extension of time, petitioner did not complete any filing in response to the order. A decision was issued on March 13, 2023, dismissing the case.  (ECF No. 29.)  Judgment entered on April 14, 2023.  (ECF No. 32.)

Petitioner subsequently filed the instant motion for attorneys' fees and costs on October 11, 2023.  (ECF No. 34.)  Respondent filed his opposition on October 20, 2023. (ECF No. 35.)  Petitioner filed a reply on October 27, 2023.  (ECF No. 36.)  Accordingly, petitioner's motion is now ripe for resolution.

## II.  Factual History and Dismissal

The factual history is set forth in greater detail in the dismissal decision.  (ECF No. 29, pp. 4-7; *Ramsey ex rel. C.R. v. Secretary of Health & Human Servs.,* No. 21-1486V, 2023 WL 2823403, at *3-5 (Fed. Cl. Spec. Mstr. Apr. 7, 2023.)  As relevant to this motion, no developmental concerns were noted in C.R.'s early life up to the point of his 15-month well child encounter at which the vaccines at issue were administered on June 18, 2018.  (Ex. 18, p. 557; Ex. 1.)  According to petitioner's affidavit, C.R. began experiencing new onset of the following symptoms "shortly after" receipt of these vaccines: lethargy, dizziness and diarrhea, loss of appetite, uncontrollable crying, red and swollen injection site, tremors and body jerking, head shaking and wobbly gait, catatonic – staring off into space, and speech deterioration.  (Ex. 2, p. 1.)  However, neither these symptoms, nor any concern of encephalopathy, was recorded at subsequent pediatric medical encounters of August 3, 2018 (ear infection) and September 18, 2018 (18-month well child visit).  (Ex. 18, p. 51, 452-55, 478.)

Autism was first suspected at C.R.'s 18-month well child encounter and he was referred for an occupational therapy oral motor evaluation at which delayed receptive and expressive language skills were assessed in the context of concern for autism.  (Ex. 18, p. 453; Ex. 9, p. 106-07.)  As of October 26, 2018, Dr. Backes began noting developmental regression, speech delay, food texture issues, and abnormal gait, the onset of which he placed in the autumn, after a Hepatitis A vaccine administered September 18, 2018.  (Ex. 18, pp. 478.)  As of November 6, 2018, C.R. was assessed

4

for ASD for which there was moderate-to-severe concern. (Ex. 10, pp. 3-20.) Again, however, no vaccine-related encephalopathy was documented.

It was not until January 3, 2019, that Dr. Backes recorded a report by petitioner of an adverse event following vaccination. (Ex. 18, p. 42.) However, C.R. was subsequently seen by a neurologist on March 12, 2019, who did not agree that C.R.'s condition was vaccine related. (Ex. 9, pp. 350.) Nonetheless, as of March 28, 2019, Dr. Backes recorded that C.R. had experienced an encephalopathy occurring within 24 hours of his June 18, 2018 DTaP vaccination. (Ex. 5, p. 1.) Subsequently, in January of 2020, he wrote a letter further describing his encephalopathy impression. (Ex. 7.) In the letter, he confirmed that, despite C.R. having been examined on August 3, 2018 and September 18, 2018, his impression of encephalopathy was based on a parental report of symptoms, which he placed on October 26, 2018 rather than January 3, 2019. (*Id.*)

In dismissing this case, I addressed several points.

First, I did not credit petitioner's affidavit with respect to abrupt symptoms alleged to have occurred within 24 hours of vaccination. (ECF No. 29, pp. 10-11.) I explained that the description in the affidavit had no support in the medical records, which instead "reflect an evolving pattern of developmental concerns with uncertain dates of onset for specific clinical features." (*Id.* at 11.) I noted that the affidavit is contrary to many histories that petitioner provided C.R.'s treating physicians. I also noted that,

> To the extent petitioner's affidavit describes an abrupt onset of numerous symptoms she now asserts are concerning for an acute encephalopathy, there is no explanation to indicate why these symptoms were not the subject of prompt medical attention, why C.R. was not seen by any physician for any reason between June 18, 2018, and August 3, 2018, or why these specific symptoms were not explicitly reported at numerous subsequent medical encounters.

(*Id.*)

Second, I explained that C.R. was seen at six separate medical encounters – including with Dr. Backes – during the six months following the vaccinations at issue and none of the medical professionals that examined C.R. raised any suspicion for an encephalopathic state. (ECF No. 29, p. 11.) I concluded that "[t]hese exams preponderantly demonstrate that, even if C.R. had experienced the post-vaccination symptoms alleged, he was back to his neurologic baseline by the time he began returning to medical care the following month, albeit the baseline of a child with developmental concerns consistent with emerging ASD." (*Id.*)

Third, I stressed that Dr. Backes's diagnosis of encephalopathy based on parental report is contrary to his own contemporaneous medical treatment records. (ECF No. 29, pp.11-12.) I also noted that Dr. Backes confirmed that he declined to submit a VAERS report for the alleged encephalopathy, that he did not explain any

5

causal theory, and that the letter as a whole did not appear to state an opinion to any reasonable degree of medical probability.  (*Id*. at 12.)  Accordingly, I did not find that the letter supported causation-in-fact.  (*Id*.)

Finally, in the interest of completeness I noted that neither Dr. Backes's letter nor C.R.'s medical records supported any suggestion that his autism was vaccine caused.  "Nor would such an opinion be credible if it were offered."  (ECF No. 29, p. 12.)  I explained that "[a]lthough a child who happens to have ASD can still suffer a separate vaccine-related injury, that is not the case here . . ."  (*Id*. at 13.)

### III.     Legal Standard

Petitioners who are denied compensation for their claims brought under the Vaccine Act may still be awarded attorneys' fees and costs "if the special master or court determines that the petition was brought in good faith and there was reasonable basis for the claim for which the petition was brought."  42 U.S.C. § 300aa-15(e)(1); *Cloer v. Sec'y of Health & Human Servs.*, 675 F.3d 1358, 1360-61 (Fed. Cir. 2012), *aff'd sub nom. Sebelius v. Cloer*, 569 U.S. 369 (2013).  Such awards are within the special master's discretion.  *See* 42 U.S.C. § 300aa-15(e)(1); *Cloer*, 675 F.3d at 1362-63.  "Good faith" and "reasonable basis" are two distinct requirements under the Vaccine Act.  *Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017).  Good faith is a subjective inquiry while reasonable basis is an objective inquiry that does not factor subjective views into consideration.  *See James-Cornelius ex rel. E.J. v. Sec'y of Health & Human Servs.*, 984 F.3d 1374, 1379 (Fed. Cir. 2021).

Determining whether there was a reasonable basis for the filing of a petition involves examining the *prima facie* petition requirements of section 300aa-11(c)(1) of the Vaccine Act, with most cases focusing on the necessary causation element of the petition.  *Cottingham ex rel. K.C. v. Sec'y of Health & Human Servs.*, 971 F.3d 1337, 1345-46 (Fed. Cir. 2020).  The evidentiary standard for establishing a reasonable basis as a prerequisite to an award of attorneys' fees and costs is lower than the evidentiary standard for being awarded compensation under the Vaccine Act.  *Id.* at 1346.  To establish a reasonable basis for attorneys' fees, the petitioner need not prove a likelihood of success.  *See Woods ex rel. Woods v. Sec'y of Health & Human Servs.*, No. 10-377V, 2012 WL 4010485, at *5, 6 (Fed. Cl. Spec. Mstr. Aug. 23, 2012).  Instead, the special master considers the totality of the circumstances and evaluates whether objective evidence, while amounting to less than a preponderance of evidence, constitutes "more than a mere scintilla" of evidence of the required showing.  *Cottingham*, 971 F.3d at 1344, 1346; *see also Amankwaa ex rel. B.M.A. v. Sec'y of Health & Human Servs.*, 138 Fed. Cl. 282, 287 (2018).

Determining what constitutes "more than a mere scintilla" of evidence has been acknowledged to be a "daunting task."  *Cottingham v. Sec'y of Health & Human Servs.*, 154 Fed. Cl. 790, 795 (2021).  The required showing has been characterized as "evidence beyond speculation that provides a sufficient basis for a reasonable inference of causation."  *Id*. (quoting *Penley v. McDowell Cnty. Bd. Educ.*, 876 F.3d 646, 655 (4th

Cir. 2017)).  "More than a mere scintilla" of objective evidence supporting causation can derive from medical records that provide "only circumstantial evidence of causation." *James-Cornelius*, 984 F.3d at 1379-80 (quoting *Cottingham*, 971 F.3d at 1346).  For example, the Federal Circuit in *James-Cornelius* found significance in (1) petitioner's medical records containing a doctor's note questioning whether a vaccine adverse event should be reported, (2) the medical course suggesting a challenge-rechallenge event of petitioner's symptoms becoming worse after additional injections of the vaccine, (3) medical articles hypothesizing that the vaccine can cause the symptoms at issue, and (4) petitioner having suffered some of the same symptoms that were listed in the vaccine's package insert as potential adverse reactions of the vaccine.[4]  *Id.* at 1379-81; *see also Cottingham*, 971 F.3d at 1346 (finding that petitioner's medical records showed, at minimum, circumstantial evidence of causation where petitioner's medical records showed that petitioner received the Gardasil vaccine and subsequently experienced symptoms that were identified in the Gardasil package insert as potential adverse reactions of the vaccine).

## IV.     Party Contentions

In her initial motion, petitioner leans heavily on policy arguments, contending that the Vaccine Program is intended to have a "generous" and "lenient" approach to attorneys' fees and costs in order to facilitate representation for vaccine-injured petitioners.  (ECF No. 34, pp. 1-5.)  Petitioner argues that "[a]n analysis of the evidence in this case, when construed in a light most favorable to the non-movant, and when reasonable inferences are drawn in petitioner's favor, demonstrates petitioner's claim had a reasonable basis."[5]  (*Id.* at 8.)  With regard to the merits of this case, she contends that her reporting of symptoms of encephalopathy, coupled with Dr. Backes's subsequent encephalopathy diagnosis, are sufficient to support a reasonable basis.  (*Id.* at 8-9.)  She asserts that the package insert for the DTaP vaccine supports Dr. Backes's opinion regarding vaccine-caused encephalopathy and that the medical records support the difference in C.R.'s condition pre- and post-vaccination.  (*Id*.)

In response, respondent stresses a prior decision by the Chief Special Master which explained that the Omnibus Autism Proceedings ("OAP") and subsequent, uniformly rejected, cases have put counsel on notice that "if counsel pursue, to a

---

[4] Nothing in *James-Cornelius* suggests the full extent of what may constitute circumstantial evidence, but the four examples of circumstantial evidence in *James-Cornelius* provide some guidance regarding the types of circumstantial evidence that may be considered in determining whether a reasonable basis was established.  Conversely, the Federal Circuit also stressed in *James-Cornelius* that an award of attorneys' fees and costs is within the special master's discretion and remanded the case for further proceedings.  *See* 984 F.3d at 1381.  Accordingly, it is also not the case that the presence of these specific elements of circumstantial evidence necessarily compel a finding that reasonable basis exists.

[5] I stress that, even accounting for petitioner's arguments favoring a lenient or generous treatment of attorneys' fees and costs, this articulation does not reflect the standard for assessing attorneys' fees and costs, even as otherwise discussed throughout petitioner's own briefing.  Petitioner's brief otherwise includes a discussion of the relevant legal standard that aligns with what is described within this decision.  Petitioner *is the movant* and does bear an affirmative, albeit less than preponderant, burden of proof with respect to demonstrating that an award of reasonable attorneys' fees and costs is appropriate.

decision, theories linking vaccines to ASD, and their evidence proves to be highly unpersuasive, then special masters will find that the claim was brought without reasonable basis." (ECF No. 35, p. 10 (quoting *Heath ex rel. J.N.H. v. Sec'y of Health & Human Servs.*, No. 19-749V, 2020 WL 7869438, at *3 (Fed. Cl. Spec. Mstr. Nov. 16, 2020); *see also A.S. ex rel. Sterling v. Sec'y of Health & Human Servs.*, No. 16-551V, 2020 WL 549443, at *4 (Fed. Cl. Spec. Mstr. Jan. 3, 2020). Respondent explains that this warning was issued prior to the filing of this case. (*Id*.)

Respondent observes that the undersigned's dismissal decision found that petitioner had failed to come forward with credible evidence that C.R. suffered symptoms of either an acute or chronic encephalopathy as required by the Vaccine Injury Table, that C.R. suffered any encephalopathy caused-in-fact by vaccination, or that his ASD was in any way related to his vaccinations. (ECF No. 35, p. 11.) Thus, while acknowledging that the evidentiary threshold for attorneys' fees and costs is lower, he contends that petitioner has not presented the requisite "more than a mere scintilla" of evidence that could support an award for attorneys' fees and costs. (*Id*.) Respondent argues that the history petitioner provided Dr. Backes regarding symptoms arising less than 72 hours post vaccination is not merely unsubstantiated by contemporaneous medical records, but actually contradicted by the records. (*Id*. (citing Ex. 18, p. 452 (September 18, 2018 encounter noting no vaccine reactions).) Moreover, even if the reported symptoms were credible enough to suggest an acute encephalopathy, the medical records from August and September of 2018 likewise are not consistent with any ongoing encephalopathy. (*Id*. at 11-12.) Respondent contends that Dr. Backes's encephalopathy diagnosis is entitled to "no weight." (*Id*. at 12.)

In reply, petitioner reiterates her reliance on the DTaP package insert, her report of symptoms, and Dr. Backes's diagnosis. (ECF No. 36, p. 6.) Petitioner cites 14 prior cases for the proposition that cases involving "encephalopathy and/or autism" have been awarded attorneys' fees and costs despite being dismissed.[6] (*Id*. at 7-8.) Petitioner added that "[i]n the event this Court believes the reasonable basis for pursuing the claim ceased at some point prior to the dismissal of this case, Petitioner respectfully requests all fees and costs be paid while the reasonable basis existed." (*Id*. at n. 1.)

Based on the parties' briefing, petitioner's good faith in bringing this case is not challenged.

## V.  Discussion

In her motion for attorneys' fees and costs, petitioner does not assert that she could demonstrate that she had a reasonable basis for filing a petition based on C.R.'s

---

[6] Petitioner's list of cases is not illuminating. Nine of the cases were filed before the OAP was concluded. The other five are clearly distinguishable. In fact, some are cases that resulted in compensation. The fact that petitioner has come forward with other encephalopathy cases wherein attorneys' fees and costs have been awarded is not surprising. Nothing in this decision suggests that encephalopathy cannot be a viable claim given appropriate factual circumstances. Indeed, as discussed below, it is a Table Injury.

8

autism diagnosis. Nor, even if she did so argue, would I find that an autism-based claim would have had a reasonable basis. *E.g.*, *Warner ex rel. D.W. v. Sec'y of Health & Human Servs.*, No. 20-225V, 2024 WL 707002 (Fed. Cl. Spec. Mstr. Jan. 23, 2024); *see also Heath*, 2020 WL 7869438, at *3. However, petitioner's allegation of encephalopathy with symptoms arising within 24 hours of C.R.'s DTaP vaccination is consistent with a Table Injury. 42 C.F.R. § 100.3(a). Accordingly, whether there was a reasonable basis for the filing of this petition turns on whether there is "more than a mere scintilla" of evidence supporting petitioner's factual contention of symptoms consistent with encephalopathy arising post-vaccination.[7] *Cottingham*, 971 F.3d at 1345-46 (explaining that reasonable basis is determined based on the pleading requirements of § 300aa-11(c)(1)); § 300aa-11(c)(1) (petitioner must demonstrate either a Table Injury or an injury caused-in-fact by vaccination). For the reasons discussed below, I find that there was not and that this case therefore lacked any reasonable basis for the filing of the petition.

In assessing reasonable basis, special masters look to whether the claim is "feasible" (as opposed to likely to succeed) based on the totality of the circumstances, which includes the factual basis for the claim. *Woods*, 2012 WL 4010485, at *6-7; *Amankwaa*, 138 Fed. Cl. at 287. In that regard, medical records can circumstantially support a reasonable basis for the filing of a petition even without an express medical opinion. *Cottingham*, 971 F.3d at 1346. Here, however, the contemporaneous medical records do not provide any such support. As noted in the dismissal decision, C.R. was seen by six different medical professionals during the six months following the subject vaccinations, and none of those medical encounters recorded any suspicion of encephalopathy by the medical providers, vaccine caused or otherwise. *Ramsey*, 2023 WL 2823403, at *3-5 (citing Ex. 9, p. 86, Ex. 10, pp. 3, 11; Ex. 18, pp. 43, 47, 51, 452-53, 478). Even without requiring any express medical opinion supporting the presence of an encephalopathy, the medical records from June 18, 2018 into the autumn of 2018 include no reports of symptoms concerning for encephalopathy or reduced levels of consciousness.

---

[7] Encephalopathy itself is a broad term that simply means "any degenerative disease of the brain." *Encephalopathy,* DORLAND'S MEDICAL DICTIONARY ONLINE, https://www.dorlandsonline.com/dorland/definition?id=16202&searchterm=encephalopathy (last visited May 28, 2024). Accordingly, it is not the case that the Table Injury of encephalopathy, which is subject to the specific limitations of the Qualifications and Aids to Interpretation accompanying the Vaccine Injury Table, is coextensive with the broader medical concept. Thus, I do note that the petitioner did not specifically invoke a Table Injury, but instead discussed literature associating the DTaP vaccine to encephalopathy, suggesting a cause-in-fact claim. However, the only evidence petitioner filed with respect to vaccine-caused encephalopathy was the package insert for DAPTACEL. (Ex. 4.) That document defines encephalopathy as "e.g. coma, decreased level of consciousness, prolonged seizures." (*Id*. at 4.) For purposes of this decision, this understanding of encephalopathy is sufficiently similar to the criteria for a Table Injury of encephalopathy that the distinction between a Table Injury or injury caused-in-fact by vaccination is not dispositive. In either event, the pertinent issue is whether there is sufficient evidence that C.R. suffered an abrupt onset of symptoms, inclusive of the alleged symptoms consistent with reduced consciousness, within days of his vaccination and, if so, whether that occurrence explains his subsequent developmental issues.

Moreover, as discussed in the decision dismissing this case, an acute encephalopathy inclusive of the abrupt onset of the symptoms described by petitioner would have constituted a likely medical emergency. *Ramsey*, 2023 WL 2823403, at *8; *see also A.S.,* 2020 WL 549443, at *6 (denying attorneys' fees and costs in an alleged autism/encephalopathy case based in part on "the importance of evidence of acute and/or immediate encephalopathy precipitated by a close-in-time vaccination."). Yet, the medical records reflect that C.R. was not seen by any medical provider for over a month after the alleged onset of these symptoms. And, when medical attention was sought, it was for an ear infection. (Ex. 18, p. 51). Thus, the contemporaneous medical records include no evidence supportive of either an initial acute encephalopathy in the days following vaccination or any chronic encephalopathy ongoing during the months following vaccination.

Nonetheless,

> for many medical symptoms or events – such as a headache or other pain, dizziness, nausea, vomiting – the patient's or a parent's testimony may be the best, or only, direct evidence of their occurrence. Medical records related to those symptoms would likely be based on the statements of those who experienced them.

*James-Cornelius*, 984 F.3d at 1380. Thus, lay witness testimony regarding such symptoms cannot be categorically rejected. *Id*. However, "[m]edical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras ex rel. Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed Cir. 1993). Therefore, while lay testimony as to the presence of symptoms must be evaluated as objective evidence, "medical records may indeed serve as important corroborating evidence for evaluating testimony's credibility." *James-Cornelius*, 984 F.3d at 1380. In that regard, more remote histories of present illness in conflict with contemporaneous medical records are generally given less weight than the earlier records. *E.g.*, *R.K. ex rel. A.K. v. Sec'y of Health & Human Servs.*, No. 03-632V, 2015 WL 10936124, at *76-77 (Fed. Cl. Spec. Mstr. Sept. 28, 2015) (holding that more remote histories of illness do not have sufficient indicia of reliability to be credited over conflicting contemporaneous medical records and earlier reported histories), *motion for rev. denied*, 125 Fed. Cl. 57 (2016), *aff'd*, 671 F. App'x 792 (Fed. Cir. 2016); *Anderson v. Sec'y of Health & Human Servs.*, No. 20-195V, 2022 WL 17484352, at *10 (Fed. Cl. Spec. Mstr. Nov. 10, 2022) (observing that "[g]iven petitioner's earlier vaccination and treatment records, the more remote history she provided the orthopedist is entitled to less weight"); *see also Vergara ex rel. J.A.V. v. Sec'y of Health & Human Servs.*, No. 08-882V, 2014 WL 2795491, at *4 (Fed. Cl. Spec. Mstr. May 15, 2014) ("Special Masters frequently accord more weight to contemporaneously-recorded medical symptoms than those *recorded in later medical histories*, affidavits, or trial testimony." (emphasis added)).

As I explained in the decision dismissing this case,

> To the extent petitioner's affidavit describes an abrupt onset of numerous symptoms she now asserts are concerning for an acute encephalopathy, there is no explanation to indicate why these symptoms were not the subject of prompt medical attention, why C.R. was not seen by any physician for any reason between June 18, 2018, and August 3, 2018, or why these specific symptoms were not explicitly reported at numerous subsequent medical encounters.

*Ramsey*, 2023 WL 2823403, at *8. Thus, upon consideration of the record as a whole, I did not credit petitioner's affidavit over the contemporaneous medical records that instead "reflect an evolving pattern of developmental concerns with uncertain dates of onset for specific clinical features." *Id*. In again considering this issue in light of the lesser burden of proof applicable to an award of attorneys' fees and costs, I now further conclude that there is not the requisite "more than a mere scintilla of evidence" that C.R. suffered symptoms consistent with an encephalopathy in the days following his June 18, 2018 vaccinations. Although I have considered petitioner's affidavit as *some* objective evidence, it is entirely uncorroborated by contemporaneous medical records, and I find that it lacks sufficient credibility to support a reasonable basis for the filing of this petition without more. In particular, I stress that petitioner's affidavit is inconsistent with histories she provided to multiple different physicians during the post-vaccination period wherein she expressed concern regarding emerging ASD, rather than symptoms concerning for the onset of an encephalopathy. (Ex. 10, pp. 3, 29; Ex.18, pp. 43, 498.)

C.R.'s pediatrician, Dr. Backes, did eventually support a diagnosis of encephalopathy. However, Dr. Backes's conclusion is only as reliable as the underlying information. *See, e.g.*, *Garner v. Sec'y of Health & Human Servs*., No. 15-63V, 2017 WL 1713184, at *11 (Fed. Cl. Spec. Mstr. Mar. 24, 2017) (explaining that "the opinions or diagnoses of treating physicians are only as trustworthy as the reasonableness of their suppositions or bases. The views of treating physicians should also be weighed against other, contrary evidence also present in the record—including conflicting opinions among such individuals."), *mot. rev. denied,* 133 Fed. Cl. 140 (2017); *see also Snyder ex rel. Snyder v. Sec'y of Health & Human Servs*., 88 Fed. Cl. 706, 745 n.67 (2009) ("there is nothing . . . that mandates that the testimony of a treating physician is sacrosanct—that it must be accepted in its entirety and cannot be rebutted"); *Hodge v. Sec'y of Health & Human Servs*., No. 09-453V, 2022 WL 4954672, at *36 (Fed. Cl. Spec. Mstr. Sept. 12, 2022) (collecting cases for the proposition that "[n]umerous cases in the Vaccine Program have recognized that a special master may reject the opinion from an expert that assumed a set of facts not supported by the record").

Dr. Backes acknowledged that his diagnosis was based on "parental observation only" and that concerns of encephalopathy were not brought to him prior to October of 2018 (at the earliest), some four to five months post-vaccination. (Ex. 7, p. 2.) In fact, Dr. Backes suggested that he had declined to submit a VAERS report for this reason.

11

(*Id.*)  Thus, Dr. Backes essentially disclaims any direct knowledge of a medical history that would support his purported diagnosis.  Moreover, in addition to being unsupported, Dr. Backes's opinion is actually inconsistent with the overall pattern of C.R.'s medical history as documented in the contemporaneous medical records.  Further still, Dr. Backes's diagnostic opinion is especially faulty because that medical history included Dr. Backes's own prior examination of C.R. during which he had not documented any concern for an ongoing encephalopathy.  (*Compare* Ex. 7, *with* Ex. 18.)  Ultimately, because I do not find petitioner's testimonial evidence credible with respect to her report of post-vaccination symptoms of encephalopathy, and because Dr. Backes's opinion is in turn based explicitly and exclusively on that parental observation despite his own observations in the interim, I agree with respondent that Dr. Backes's diagnostic opinion is so unreliable as to be is entitled to effectively no weight at all.

     My finding that this case lacked a reasonable basis for the petition filing is consistent with prior program experience.  Subsequent to the resolution of the OAP, many autism cases began to lose reasonable basis as they pushed forward, given how extensively autism and autism-related cases had been litigated with no success in this program.  *See, e.g.*, *Hardy v. Sec'y of Health & Human Servs.*, No. 08-108V, 2016 WL 4729530 (Fed. Cl. Spec. Mstr. Aug. 16, 2016) (denying petitioners' motion for attorneys' fees in part because it was unreasonable for petitioners to take to trial their claim that the vaccinee's autism spectrum disorder or autistic symptoms were vaccine-related); *Hooker v. Sec'y of Health & Human Servs.*, No. 02-472V, 2017 WL 3033940 (Fed. Cl. Spec. Mstr. Apr. 11, 2017) (denying petitioners' motion for attorneys' fees in part because petitioners did not have a reasonable basis to continue to pursue their autism claim in light of the OAP); *Hashi v. Sec'y of Health & Human Servs.*, No. 08-307V, 2016 WL 5092917 (Fed. Cl. Spec. Mstr. Aug. 25, 2016) (denying petitioners' motion for attorneys' fees in part because petitioners did not have a reasonable basis to continue to pursue their claim that vaccines could cause or significantly aggravate autism).  Thus, it is well established that further such claims are unlikely to have a reasonable basis, even at the initial time of filing.  *See A.S.,* 2020 WL 549443; *Heath*, 2020 WL 7869438.

     In particular, prior cases have seen attorneys' fees and costs denied where petitioners implausibly attempted to refashion autism-related developmental concerns as vaccine-caused encephalopathy or encephalitis.  *Heath*, 2020 WL 7869438 (denying petitioners' motion for attorneys' fees because their claim that the Tdap vaccination caused autoimmune encephalitis which led to a significant aggravation of the vaccinee's autism spectrum disorder lacked reasonable basis); *Miller ex rel. A.H.M. v. Sec'y of Health & Human Servs.*, No. 02-235V, 2016 WL 3746160, at *10 (Fed. Cl. Spec. Mstr. June 3, 2016) (denying petitioners' motion for attorneys' fees in part because it was unreasonable to take their claim that their child's autism spectrum disorder was vaccine caused to hearing, and there was no reasonable basis for petitioner's "Table Injury encephalopathy" claim, which "was completely contradicted by the medical records, and completely devoid of merit").  This includes at least one prior case in which, similar to the instant case, a petitioner presented a non-contemporaneous medical opinion that was contradicted by the provider's medical records.  *E.g.*, *Heath*, 2020 WL 7869438, at *3 (citing a "total lack of evidence" establishing a post-vaccination reaction and

12

observing that "[p]etitioners' reliance on a non-contemporaneous treater opinion letter, prepared for pending litigation and unsupported by the medical records, can be afforded minimal weight at best"); *see also Hardy*, 2016 WL 4729530, at *12 (finding reasonable basis dissipated when it became clear that expert's Table encephalopathy opinion was "completely contradicted" by the medical records); *Miller*, 2016 WL 3746160, at *10 (same).

Petitioner stresses that it is the intent of the program to foster representation for injured petitioners by being "generous" and "lenient" in assessing attorneys' fees and costs. (ECF No. 34, pp. 1-5.) In that regard, petitioner is correct that access to counsel was a consideration in omitting any prevailing party requirement for attorneys' fees and costs in this program. *Avera ex rel. Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1352 (Fed. Cir. 2008). However, it must also be stressed that, even when construed liberally as remedial legislation, the good faith and reasonable basis requirements were included as explicit limitations on the payment of attorneys' fees and costs to non-prevailing petitioners. *Cloer*, 675 F.3d at 1362 (explaining that "it is beyond dispute that Congress intended attorneys' fees to be awarded only in cases brought in good faith and where there was a reasonable basis for the claim underlying the petition . . .") Thus, it is also well established in this program that counsel has a duty to avoid frivolous litigation and should use "reasoned judgment in determining whether to . . . pursue a claim." *Murphy ex rel. Murphy v. Sec'y of Health & Human Servs.*, 30 Fed. Cl. 60, 62 (1993), *aff'd*, 48 F.3d 1236 (Fed. Cir. 1995). "[T]he [Vaccine] Program's interest in promoting attorney representation in vaccine cases, as contemplated by the attorneys' fees provision of the statute, must be balanced carefully against the court's examination of the reasonableness of the basis for bringing the vaccine petition." *Turner v. Sec'y of Health & Human Servs.*, No. 99-544V, 2007 WL 4410030, at *11 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Although counsel has an "ethical obligation to be a zealous advocate," that does not give counsel a "blank check to incur expenses without regard to the merits of [the] claim." *Perreira ex rel. Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34, 35 (1992).

Petitioner's counsel in this case is experienced in the vaccine program. *Howie v. Sec'y of Health & Human Servs.*, No. 16-1575V, 2022 WL 1553044, at *2 (Fed. Cl. Spec. Mstr. Apr. 22, 2022) (explaining Mr. Braden Blumenstiel had 16 years of overall legal experience and 12 years of experiencing handling Vaccine Act cases as of 2022). Accordingly, he is well aware of the standard for assessing reasonable basis. In fact, this is not the first time he has filed or pursued a case that lacked a reasonable basis. *Hoffman v. Sec'y of Health & Human Servs.*, No. 16-1122V, 2023 WL 3092668 (Fed. Cl. Spec. Mstr. Mar. 29, 2023) (Mr. Blumenstiel denied attorneys' fees in a case originally filed by James Blumenstiel because petitioner's claim lacked reasonable basis); *Warner*, 2024 WL 707002 (Mr. Blumenstiel denied attorneys' fees because petitioner's claim lacked reasonable basis); *Kamppi v. Sec'y of Health & Human Servs.*, No. 15-1013V, 2020 WL 7767513 (Fed. Cl. Spec. Mstr. Nov. 6, 2020) (Mr. Blumenstiel denied attorneys' fees because petitioner's claim lacked reasonable basis). Holding Mr. Blumenstiel to the appropriate standard for assessing reasonable basis is unlikely to have any chilling effect on the overall availability of willing counsel in the program.

In light of all of the above, I find that petitioner has not demonstrated that she had a reasonable basis to file this petition. Petitioner's motion for attorneys' fees and costs is **DENIED** and no award for attorneys' fees and costs is made. In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of court is directed to enter judgment herewith.

**IT IS SO ORDERED.**

**s/Daniel T. Horner**
Daniel T. Horner
Special Master
